# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 18-CR-30021-MJR-1

V.

EMMANUEL D. ABDON,

Defendant,

## DECLARATION OF EMMANUEL D. ABDON IN SUPPORT OF A MOTION FOR COMPASSIONATE RELEASE / SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582 (c) (1) (A)

EMMANUEL D. ABDON, of sound mind and of full age, declares the truth of the following under the penalties of perjury contained in Title 18 of the United States Code:

1- I am the defendant in the above-Captioned matter.

2- I make this Declaration in support of the instant motion for Compassionate Release/Sentence reduction

pursuant to 18 U.S.C. § 3582 (c) (1) (A).

3. I make this application Pro Se, unrepresented by Counsel. As I am untrained in the science of law, I ask that the Court afford this submission with the great deference given to Pro Se litigents.

4. Since December 5, 2020, because of an outbreak of the Covid-19 virus that has overrun the Federal Bureau of Prisons (BOP) facility — Low Security Correctional Institution — Allenwood (LSCI-Allenwood), all inmates here been subject to strict "LOCKDOWN" procedures.

5. I am an inmate committed to the custody of the United States Attorney General within the BOP. My current facility is LSCI-Allenwood and my Register number is 14004-025.

6. Because of the COVID-19 outbreak at LSCI-Allenwood and the strict "LOCKDOWN" procedure imposed since December 5, 2020, my housing unit (Gregg B) has been deemed a "quarantine unit" and accordingly, I have not had access to the Education Department and the typewriters and photocopiers there that are used for the production of legal WRits. Accordingly, I beg the Court's indulgence for my handwritten submission.

7. This Declaration supports my instant application for Compassionate release / reduction in sentence pursuant to 18 U.S.C. § 3582 (c)(i)(A) based on extraordinary and Compelling reasons and recent changes to the applicable law. See United States v. Gunn, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020) (Easterbrook, J.).

8. Based on my understanding of the applicable law, a Successful motion under 18 U.S.C. § 3582 (c)(i)(A) must address the following Concerns:
(1) Jurisdiction;
(2) Extraordinary and Compelling reason(s);
(3) Dangerousness pursuant to 18 U.S.C. § 3142(b);
(4) The 18 U.S.C. § 3553 (a) factors; and
(5) Release Plan. I will address the facts that Support these elements in turn.

## Jurisdiction

9. I submitted an administrative request to the Warden of LSCI - Allenwood on June 18, 2020. See the attached EXHiBiT "A". As it has been more than 30 days since the administrative request was received, I have exhausted my administrative remedies under 18 U.S.C. § 3582 (c)(i)(A), which provides that the Court may act 30 days after the Warden receives the application. United States v. Hammond, 2020 U.S. Dist Lexis 67331 (D.D.C. Apr. 16, 2020).

## Extraordinary and Compelling Reason(s)

10. On November 20, 2020, specifically following the second Circuit's reasoning in United States v. Brooker, 976 F. 3d 228 (2d. Cir. 2020), the Seventh Circuit issued its decision in United States v. Gunn, 2020 U.S. App. Lexis 36612, No. 20-1959 (7th Cir. 2020). In issuing the opinion for the Court, Judge Easterbrook announced that, in reviewing a Compassionate release motion brought by a prisoner, district Courts are free to consider the full slate of extraordinary and Compelling reasons that an imprisoned person might bring before them and are not bound by U.S. Sentencing Guideline §1B1.13 or its application notes. Id. As the Court noted: "Any decision is 'Consistent with' a nonexistent policy statement". Id.

11. The 18 U.S.C. § 3582(c)(1)(A) statute was clarified by the Second Circuit in Brooker, whose reasoning was specifically adopted by the Seventh Circuit. Writing for the Second Circuit, Judge Calabresi said:

> "It bears remembering that Compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district Court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but

impose a significant term of probation or supervised release in its place. Id. Beyond this a district Court's discretion in this area — as in all sentencing matters — is broad. See United States v. Cavesa, 550 F. 3d 180, 188 (2d. Cir. 2008) (en banc) (noting a district Court's "very wide latitude" in sentencing). The only statutory limit on what a Court may consider to be extraordinary and Compelling is that "[r]ehabilitation... alone shall not be Considered on extraordinary and Compelling reason." 28 U.S.C. § 994(t)."

12- Moreover, Congress seemingly Contemplated that Courts might Consider such circumstances when it passed the original Compassinate release statute in 1984. See 5. Rep. No 98-225, at 55-56 (1984) (noting that reduction may be appropriate when "other extraordinary and Compelling Circumstances Justify a reduction at an unusually long Sentence"); See also United States v. Maumau. No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *6-*7 (D. Utah Feb. 18, 2020) (further discussing this history and Collecting Cases where district Courts have reduced Sentences in part because they were overly long).

13. Accordingly, I advance a Combination of extraordinary and Compelling reasons that, When taken in Combination, Justify my Compassionate release/sentence reduction pursuant to 18 U.S.C. §3582(c)(1)(A).

## The Sentence Imposed is overly-long

14. On March 25, 2019, I was sentenced by the Court to a term of 240 months imprisonment. The Goverment had argued that my proper offense level was 41 and my Criminal history Category was **I**, yelding a Guidelines Sentecing range of 324 - 405 months imprisonment.

15. A Sentencing Court must first Compute the Guidelines Sentence Correctly, then decide Whether the Guidelines Sentence is the Correct Sentence for that defendant. See United States v. Santiago, 495 F. 3d. 820, 825 (7th Cir. 2007)

16. The Court recognized that the Guidelines Sentence Calculation was driven by the Feeney Amendment. See Sentencing, Document 158, page 86. The five (5) level enhancement Carried by the Feeney Amendment (§4B1.5(b)(1)) overly-punishes in relation to the underlying Conduct In my Case, producing an inflated offense level of 41.

17. By way of comparison, a person who hijacks an airplane is at offense level 38. See U.S.S.G. § 2A5.1. A person who commits second degree murder is at offense level 38. See § 2A1.2. For a bank robber to reach a total offense level of 41, he would have to fire a gun, inflict serious bodily injury on a victim, physically restrain another victim, and get away with the stunning total of $2.5 million. See § 3B3.1 (Base offense level of 20, plus two (2) for robbery at a financial institution, plus seven (7) levels for discharge of a firearm, plus four (4) for serious bodily injury, plus two (2) levels for physical restraint of a victim, plus six (6) levels for loss of more than $2.5 million to adjusted offense level 41).

18. At Sentencing, the Court recognized the "fundamental problem" with the guidelines as applied in my particulary case. See Sentencing at 87, 1.2-6. Following the Santiago case, the Court decided that the guidelines sentence was not the correct sentence for me and the Court exercised its discretion. Id at 1.7-11.

19. While I welcomed the Court's Calculations to the extent that they were a **departure** from the Guidelines sentence, the Court itself was reticent     on the application of the Feeney Amendments five (5) level enhancement under the Court's formulation. Id. at 88, l.1-3 ("I would add five for the pattern of behavior even though I don't agree

with it, there is only two images or one and one.")

20. It is my contention that the Court's formulation that included the Feeney Amendment enhancement rendered my sentence overly-long and that 18 U.S.C. § 3582(c)(i)(A) gives the Court authority to re-sentence me based upon this extraordinary and compelling reason.

21. The Court determined the calculation, for "merely a receipt case" as a "Total offense level of 29, Criminal history Category of one(i). That is 87 to 108 months...". See Sentencing at 87, 1.18 to 88, 1.17.

22. However, if the Feeney Amendment enhancement is removed, then the total offense level is 24, and with a Criminal history Category of I, that yields a range of 51-63 months. When that range is added to the calculations " at doc 124", using the Court's own methodology, you come up with a new guideline range of 172 to 214. This measure is substantially below the 240 months to which I was sentenced.

23. To the extent that 18 U.S.C. § 3582(c)(i)(A) is in effect, a Sentencing Statute, the Court has the authority to re-sentence me for this extraordinary and compelling reason alone.

## Impact of Prison Conditions

24. Additionally, I ask the Court to Consider the impact of prison Conditions on me, Davis v. Ayala, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., Concurring) (calling for heightened Judicial scrutiny of the projected impact of jail and prison Conditions on a defendant), as an additional extraordinary and Compelling reason that the Court may Consider with respect to my application under 18 U.S.C. §3582 (c)(1)(A), in Combination with the other reasons raised herein.

25. The Court should take into account my status as a Sex offender in the prison environment. Prison Conditions for Sex offenders are generally more deplorable than those experienced by other inmates. Sex offender inmates (or those perceived to be Sex offenders) are subject to greater risk of victimization, violence, and serious physical in the prison environment than other inmates—most often with little recourse. See Ford v. Hooks, 2020 U.S. Dist. Lexis 215597 (M.D.N. Car. Nov. 18, 2020); Gilbut v. Ferhald, 2020 U.S. Dist. Lexis, 208699 (C.D. Cal. Oct. 16, 2020); Shufer v. Collier, 2020 U.S. Dist. Lexis 163516 (E.D. Tex. Aug. 6, 2020); Jordanoff v. Sinnet, 2020 U.S. Dist. Lexis 175584 (E.D. Okla. Sep. 24, 2020); Chaney v. Hyatte, 2020 U.S. Dist. Lexis 40691 (N.D. Ind. Mar. 10, 2020); Simpson v. Cox D., 2018 U.S. Dist. Lexis 77264 (S.D. Ind. May 8, 2018)

Mc. Caskill V. Nance, 2017 U.S. Dist. Lexis 81304 (S.D. Ill. May 26, 2017); Wilson v. Knight, 2017 U.S. Dist. Lexis 193305 (S.D. Ind. Nov. 22, 2017).

26. My own experience in the prison setting is revealing on this issue. I have personally witnessed sex offenders being berated as "CHOMOs" (child Molesters) and extorted. I know that I have little recourse if I were to be extorted or physically injured because of my status as a sex offender. Prison officials know that this activity occurs regularly but are unable and unwilling to do anything about it. Moreover, at LSCI-Allenwood, the prison re-inforces the status of the sex offender as a "second class" inmate. Sex offender inmates cannot and will not be given certain jobs—particularly at the Commissary. Officer Haight who does the hiring at Commissary does not hire sex offenders as his own rule, and the defacto rule of LSCI-Allenwood, a BoP institution.

27. I can attest that many of the facts as alleged in the above-cited cases are common for sex offenders. I am subject to being extorted and paying "rent" to certain powerful inmates, particularly those who have gang affiliation. At anytime, I can be told to "check-in" to protective Custody, which is the special Housing unit (SHU) usually reserved for disciplinary detention.

If I am tagged as a sex offender, I am subject to a greater probability that I will have violence done to me by other inmates. And I have no recourse if I am extorted, assaulted or physically harmed. Most inmates are "Judgment-proof" and the standard to find BOP or other prison institutions liable is very high.

28- There is little dispute that the eighth Amendment precludes the imposition of "barbaRous physical punishments" Rhodes v. Chapman, 452 U.S. 337, 345, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). But everyday that I am in prison as a sex offender subjects me to the risk of "bashasous physical punishments" being inflicted upon me that fall well outside the ambit of tolerable (albeit harsh) prison conditions. I ask the Court to take these facts into account as extraordinary and compelling reasons for sentence reduction / compassionate release.

## Covid-19 - Specific Prison Conditions

29- As the Court probably already knows, the Covid-19 virus has overrun the LSCI-Allenwood Compound and the vast majority of the BOP's Low Security Institution. See https://www.bop.gov/coronavirus.

30- Since March 31, 2020, I have been under "LockDown" conditions pursuant to the BOP's Covid-19 "Action Plan". Since December 5, 2020, I have been under strict "LockDown"

because of the Covid-19 outbreak at LSCI-Allenwood.

31. Courts nationwide have been granting Compassionate release because of the presence of Covid-19 at a particular BOP facility. See, e.g., United States v. Grant, No. 16-30021-001, 2020 WL 4036382 (C.D. Ill. July 17, 2020); United States v. Burton, No. 18-CR-00094-JswrL, 2020 WL 4035067 (N.D. Cal. July 17, 2020); United States v. Hendry, No. 2:19-CR-14035-Rosenberg, 2020 WL 4015487 (S.D. Fla. July 16, 2020); United States v. Watkins, No. 15-20333, 2020 WL 4016097 (ED. Mich. July 16, 2020); United States v. Mubry, No. 14-CR-116-1, 2020 WL 4015315 (N.D. Ill. July 16, 2020); United States v. Kirshner, No. 1:10-CR-00203-JPH-MJD, 2020 WL 4004059 (S.D. Ind. July 15, 2020).

32. I recognize that my age and my health conditions do not place me in the "HIGH RISK" category for complications and/or death if I were to contract the COVID-19 virus, as defined by the Centers for Disease Control (CDC). See groups at Higher Risk for severe Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

33. However, my status as an inmate renders me particularly vulnerable to infection due to the nature of incarceration. See CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and

Detention Facilities, https://www.cdc.gov/Coronavirus/2019-ncov/
Community/Correction-detention/guidance-Correctional-detention
.html

34. Moreover, health authorities have noted that a
disproportionate burden of illness and death caused by the
CoviD-19 virus have occurred among racial and ethnic
minority groups, including BLACKS. See https://www.cdc.gov/
Coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-
minorities.html   I AM BLACK.

35. No doubt the Government will Confer with BOP
Attorney Kerr here at LSCI-Allenwood, who will attempt
to detail efforts taken by the BOP in the face of the
CoviD-19 Crisis. Mr. Kerr will likely say that the BOP, on
March 13, 2020, announced that it was implementing the
Coronavirus (COVID-19) Phase two Action plan (the "Action
Plan") in order to minimize the risk of CoviD-19 transmission
into and inside its facilities. The Action Plan, and its
Subsequent iterations, Mr. Kerr will argue, Comprises many
preventitive and mitigation measures, including the following:
all incoming inmates are screened, and staff are regularly
Screened (temperature checks); Contractor visits are limited to
essential Services; nearly all attorney, Social, and Volunteer
Visits have been suspended; inmate movements between
facilities have been extremely limited; and institutions are
taking additional step to modify operations to maximize

Social distancing.

36. The problem with the BOP's Action Plan is that it has already been debunked by the Courts. In United States v. Gorai, 2020 U.S. Dist. LEXIS 72893 (D. Nev. Apr. 24, 2020), the Court stated, at 6:

> "First, testing inside prisons has been scant except for people who self-report symptoms which means that statistics about the number of infections already in BOP facilities are largely meaningless. And second, the plan provides no additional protections for high-risk individuals." United States v. Esparza, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020)."

37. Moreover, my own personal experience shows that BOP policy is not the specific practice at LSCI-Allenwood. Social distancing in my housing unit (Gregg B) cannot be accomplished because of the living quarters layout. Approximately 150 men live in open-air, three-men "cubes", with no doors, and with shared sinks, showers and toilets.

38. Moreover, LSCI-Allenwood notoriously underreports and delays reporting positive Covid-19 Cases. I personally know of over 200 positive Covid-19 Cases on the prison Compound. However, the numbers reported on the website at https://www.bop.gov/coronavirus do not reflect the reality on the ground.

39. On December 5, 2020, I personally witnessed 20 inmates being removed from my unit, Gregg B, because of positive Covid-19 tests. As of December 18, 2020, the BOP website still showed only 11 positive tests out of 170 that were reported to have been administered. By December 29, 2020, the BOP website was finally changed to show 186 positive tests out of 493 tests administered. But even these numbers are low based upon my personal observations.

40. It is clear that prisons are "Crowded with shared sleeping spaces and Common areas, and often with limited access to medical assistance and hygienic products" thereby "put[ting] those incarcerated inside a facility with an outbreak at heightened risk". United States v. Park, 2020 U.S. Dist. Lexis 73048, 2020 WL 1970603, at *2 (S.D.N.Y., Apr. 24, 2020) (Collecting Sources).

41. My term in prison has proved more arduous than the Court - or anyone - could ever have anticipated at sentencing. That is because, since March, 2020, I have been incarcerated during the unprecedented worldwide CoVID-19 pandemic, and as such, have been subject to extreme restrictions on inmate movement and visits and has exposed me to heightened fears of Contagion.

42. As stated by the Court in United States V. Lizardi, 2020 U.S. Dist. LEXis 188147 (S.D.N.Y., October 9, 2020) (Englemayer, J.) at 10:

A day spent in prison under extreme lockdown and in legitimate fear of Contracting a once-in-a-century deadly Virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While such Conditions are not intended as punishment, incarceration in such Circumstances is, unavoidably, experienced as more punishing. See United States V. Rodriguez, No. 00-CR-761-2(JSR), 2020 U.S. Dist. LEXis 181004, 2020 WL 5810161, at *3 (S.D.N.Y. Sep. 30, 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case. This is because federal prisons, as 'Prime Candidates' for the spread of the Virus, have had to

impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." (citation omitted); United States V. Salerno, No. 11-CR-0065-01(JSR) 2020 U.S. Dist. Lexis 86977, 2020 WL 2521555, at *3 (S.D.N.Y. May 17, 2020) ("noting that the BOP has taken a number of steps to mitigate the spread of the virus in federal prisons... [including] restrictions on visitors, restrictions on gathering... [and] lockdowns lasting at least 14 days"); United States V. Snells, No. 20-CR-126 (LTS), 2020 U.S. Dist. Lexis 65235, 2020 WL 1866034, at *2 (S.D.N.Y., Apr. 14, 2020) (noting that the BOP has instituted a mandatory 14-day quarantine lockdown of all inmates across the BOP System.")

43. Accordingly, I would argue that the time that I have spent in prison during the COVID-19 pandemic, in the very least, warrants a reduction of time to my sentence because of its extraordinary and compelling nature.

<u>I am Not a Danger Under 18 U.S.C § 3142(3)</u>
<u>Because I Consent to Deportation</u>

44. U.S.S.G. § 1B1.13(J) states that the Court must find that I am not a danger to the safety of an other person or to the Community, as provided in 18 U.S.C. § 3142(3).

I Would submit that I pose no danger to the Community because I will be deported upon my release and I Consent to the entry of an Order of Removal and the Waives of my rights to oppose deportation if the Court orders my sentence reduction/Compassionate release. I have no previous felony criminal history. I have no history of violence and the BOP has scored my RECIDIVISM RISK LEVEL as Low. See the attached EXHIBIT "B".

45. At sentencing, the Court stated:

> "I am going to recommend, Which is probably the first time I have ever done this sitting here, I do it in New Mexico, but that while he is serving his sentence that the Bureau of Prisons or Immigration and Customs begins removal proceedings. I am not suggesting that We should send the problem back to Haiti, but I am suggesting it does not belong here. He is not someone this Country I think Wants to stay within our borders. See Sentencing at P.90, l. 4-11".

46. There have been a litany of cases Where sentence reduction/Compassionate release has been granted subject a defendant's Consent to language such as:

"effective upon his signing of a
Stipulation agreeing to an Order of
Removal and waiving his rights to
Oppose his deportation."

See United States v. Afonsyev, 2020 u.s. Dist. LEXIS
204049, No. 17-CR-350 (LAP) (S.D.N.Y, Oct.30, 2020); United
States v. Frometa, 2020 U.S. Dist. LEXIS 193073, No.18-CR-
660 (AKH) (S.D.N.Y, Oct.19, 2020); United States v. Lopez, 2020
u.s. Dist. LEXIS 200076, CR-No-97-01117-ACK-2 (D. Haw.
Oct.,27,2020); United States v. Orturo-Maldonado, 2020
u.s. Dist. LEXIS 212806, No. : 15-CR-2561 (DMS) (S.D. Cal Nov.
12, 2020); United States v. Perez Alvarado, 2020 U.S.
Dist. LEXIS 159291 (S.D. Cal. Aug. 31, 2020); United States v.
Juarez-Parra, 2020 u.s. Dist. LEXIS 173106, No. CR. 11-0125 RB
(D.N. Mex., Sep.22, 2020); United States v. Ledesma Cuesta,
2020 u.s. Dist. LEXIS 167112, CR. No. 1-374-1 (E.D. Pa., Sep.14,
2020); United States v. Camacho-Duque, 2020 U.S. Dist.
LEXIS 188532, Case. No. 18-80238-CR-MIDDLEBROOKS
(S.D. Fla., Oct.5, 2020).


47- I am not someone that the united States wants to
remain in this Country. At the end of the Trump-era,
it is hard to conceive of any circumstances where I
will be released back into the united States population.
However, in the future, there will undoubtedly be a
liberalization of the immigration laws - one that may even
lead to my bail pending the immigration/deportation

decision once my prison term concludes. The Court has an opportunity to act now—one that may not be possible in the near future—if the U.S. Sentencing Commission issues new Congressionally-approved Compassionate release guidelines for the Court—to ensure that I will, under no circumstances, be released into the United States population at large—and at this time, I will consent to deportation and removal in connection with a sentence reduction / Compassionate release.

### The 18 U.S.C. §3553(a) factors favor Sentence Reduction / Compassionate Release

48. Consideration of the applicable factors from 18 U.S.C. §3553(a), as also required by §3582(c)(1)(A), leads to the conclusion that a sentence reduction / Compassionate release is warranted.

49. The "Characteristics of the defendant", §3553(a)(1) include not just the hardships that the court recognized at sentencing because I am subject to deportation (see Sentencing at p.89, l.22 to p.90, l.3), but also because I am tagged as a "Sex offender" within the prison environment. I recognize that my crimes were heinous, but I am truly remorseful.

50. Service of the time I have already served under the deplorable prison conditions as detailed herein and the fact that because of my conviction, I am subject to deportation to Haiti - a Third-World country where life is cheap and poverty and disease run rampant - never to return to the United States or its allies because of my conviction as a felon, fully reflects the seriousness of the offense, and satisfies the need to provide just punishment and to afford adequate deterrence.

51. Prior to the instant case, I had a negligible criminal history with no violence. It is submitted that the need to protect the U.S. public from further crimes is fully addressed by the sentence already served and my deportation.

52. Consideration of providing needed medical care in the most effective manner suggests release rather than continued U.S. incarceration. As the court recognized at sentencing, because I am subject to an immigration detainer, I am not able to qualify for the BOP's Sex Offender Program. I recognize that I am a sexual predator and that I need help. If I am deported, I can get the care that I need in another country.

53. Give all the facts and circumstances discussed herein, a reduction in sentence is not inconsistent with the need to avoid unwanted sentencing disparaties. See United States v. Bellamy, 2019 U.S. Dist. LEXis 124219 (D. Minn 2019)

("[A]ny disparity resulting from a reduced sentence is not unwarranted given the special circumstences he faces in prison...").

54. Upon consideration of the overall statutery common that all sentences, while sufficient to achieve the objectives identified in subsection ( ) (2), are not "greater then necessary", 18 U.S.C. § 3553(a), the sentence of imprisonment in this case should be reduced based on the extraordinary and compelling reasons stated herein.

## Release Plan

55. If the court sees fit to grant me sentence reduction / compassionate release subject to my deportation, I will be able to arrange my return to Haiti through the consulate as well as through family members who still reside there. I will no longer be the problem of the United States and its allies, and I can get the treatment I need upon release.

## Conclusion

55. I recognize that a sentence may be modified by a district court under limited circumstences. <u>Dillon v. United States</u>, 560 U.S. 817, 825 (2010). One such circumstence is pursuant to statutory authorization. See United States v. Addonizio, 442 U.S. 178, 189 & n.16

(1979); United States v. Swartt, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously-imposed sentence; it may do so only pursuant to statutory authorization"). The applicable statute here, 18 U.S.C. § 3582 (c) (1)(A), as amended by the First Step Act, provides statutory authorization for sentence modification. Accordingly, for the foregoing reasons, this Court should grant a Sentence Reduction / Compassionate release based upon the extraordinary and compelling reasons stated herein.

WHEREFORE, I respectfully request that the Court grants on Order:

(1) Granting Compassionate release subject to my Consent to deportation and removal; or in the alternative,

(2) Granting Sentence Reduction to the sentence previously-imposed by the Court; and

(3) Granting such other and further relief that the Court shall deem just and/or appropriate.

Dated: White Deer, PA
       January 11, 2021

Respectfully submitted,

Emmanuel D. Abdon
Reg. No. 14004-025
LSCI Allenwood
P.O. Box 1000
White Deer, PA 17887

\* Signed under the penalties of perjury Contained in Title 18 of the United States Code.

EXHIBIT "A"

Inmate provided with copy on 7-6-2020.

## Inmate Request to Staff Response

This is in response to your Request to Staff received on June 18, 2020, wherein you request a Compassionate Release/Reduction in Sentence (RIS) based upon Specific Extraordinary and Compelling Circumstances, specifically, you claim your medical conditions put you at high risk of contracting COVID-19.

In accordance with Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. 3582(c)(1)(A), Elderly Inmates with Medical Conditions must be Age 65 and older.  You are 32 years old and as such are not eligible for early release under the PS 5050.50.

RIS consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover.  Your case was reviewed and determined that although you have medical concerns, they are not debilitating.

In accordance with policy, the BOP should consider a Reduction in Sentence if the inmate is:

- Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair.  You are able to maneuver within the living quarters.  You are able to address your normal living needs.
- Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.  You are able to maneuver within the living quarters.  You are able to walk to Health Services.  You are able to walk to Food Service.  You are able to address your normal living needs.

Accordingly, your request for a Compassionate Release/Reduction in Sentence is denied.  If you are not satisfied with this response, you may appeal through the Bureau of Prisons, Administrative Remedy Process by obtaining an Informal Resolution form through your Correctional Counselor.

I trust this information is responsive to your inquiry.

6/30/2020
Date

D. K. White
Warden

FILE COPY

VB VY

EXHIBIT "B"

DATE REVIEWED: _____ 10-24-2019 _____

INSTITUTION: ALF          UNIT:          LA

INMATE NAME: Abdon, Emmanuel D.          REG NO:          14004-025

FIRST STEP ACT (Circle One):          (ELIGIBLE)    /    INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One):          MINIMUM    (LOW)   MEDIUM          HIGH

ABBON, EMMANUEL # 19004-065
LSCI - Allenwood
P.O. Box 1000
White Deer, PA 17887

CERTIFIED MAIL
FOR USE ONLY WITH USPS SHIPPING LABEL



...a letter was processed through
...iling procedures for forwarding to
...e letter h... and the been opened not
...ter over which this facility has
...rol, you may wish to return the
...other information or clarification
...this items correspondence for
...e ddress, please return the
...ee

$0.
PRESORTED

U.S. District Court
Clerk OFFICE
750 Missouri Ave
East St. Louis, IL 62301

* LEGAL MAIL*

*LEGAL MAIL*

RECEIVED

JAN 2 1 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE